# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

MARY H. MERRIMAN,                )
                                 )
        Plaintiff,            )
                                 )
v.                               )   Case No. CIV-17-395-KEW
                                 )
COMMISSIONER OF THE SOCIAL       )
SECURITY ADMINISTRATION,         )
                                 )
        Defendant.            )

**OPINION AND ORDER**

Plaintiff Mary H. Merriman (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 53 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as a waitress, fry cook, and home attendant. Claimant alleges an inability to work beginning December 19, 2011 due to limitations resulting from rheumatoid arthritis, fibromyalgia, osteoporosis, depression, and emphysema.

### Procedural History

On July 23, 2015, Claimant protectively filed for protectively

filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On August 31, 2016, Administrative Law Judge ("ALJ") James Linehan conducted an administrative hearing in McAlester, Oklahoma. On September 30, 2016, the ALJ entered an unfavorable decision. The Appeals Council denied review on August 28, 2017. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform work at the light exertional level with limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to include all of Claimant's limitations and including work too strenuous for his RFC at step five; and (2) failing to properly evaluate Claimant's credibility.

4

**Step Five Analysis**

In his decision, the ALJ found Claimant suffered from the severe impairments of rheumatoid arthritis, fibromyalgia, anxiety, and depression. (Tr. 19). The ALJ determined Claimant retained the RFC to perform light work. In so doing, he found Claimant could lift 20 pounds occasionally and lift/carry ten pounds frequently. Claimant could "stand and walk up to 6 hours with intermittent sitting per 8 hour day." She had unlimited use of her feet for foot controls. Claimant could frequently push, pull, and reach overhead with both arms and frequently use her hands for fingering, feeling, and handling. Claimant could occasionally balance, stoop, kneel, crouch, and crawl with no exposure to fumes, gases, and odors. Claimant would be limited to work that was of Specific Vocational Preparation (SVP) level 2 or less as defined by the *Dictionary of Occupational Titles* (DOT). Claimant had the ability to apply commons sense understanding to remember, to carry out short and simple written or oral instructions and to make simple work-related decisions. She could respond appropriately to routine workplace changes, supervisors, co-workers and on an occasional basis to the general public. (Tr. 22).

After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of office helper,

5

mailroom clerk, and hand packager, all of which the ALJ found existed in sufficient numbers in the national and regional economies. (Tr. 28). As a result, the ALJ concluded that Claimant was not under a disability from December 19, 2011 through the date of the decision. (Tr. 29).

Claimant contends the ALJ and vocational expert first erred in identifying the job of hand packager as meeting the limitations of Claimant's RFC, as established by the ALJ. The DOT identifies the "hand packager" job as "Bagger/Grocery Packer". DOT #920.687-014. The DOT does require a medium exertional level to perform the functions of the job which is inconsistent with the ALJ's RFC. The vocational expert provided no explanation for the discrepancy. As a result, the inclusion of this job was error. However, this does not necessarily result in the reversal of the decision since two other occupations were identified by the expert, both of which do appear to meet the RFC. Evans v. Colvin, 640 Fed.App'x 731, 736 (10th Cir. 2016).

Claimant next contends the ALJ's RFC did not include all of her limitations. She states that the limitations in her fingers (and associated joints), elbows, and wrists, which are consistent with the diagnoses of fibromyalgia and inflammatory arthritis, limits her to only occasional manipulation with either hand. Claimant was evaluated by Dr. William Cooper on October 10, 2015. He found

6

Claimant could effectively oppose the thumb to the fingertips, could manipulate small objects, and could effectively grasp tools such as a hammer. (Tr. 414). Consultative reviewers Dr. Evette Budrich and Dr. Matheen Khan also indicated no manipulative limitations. (Tr. 72, 101). Claimant has not directed this Court to any medical professional who imposed greater limitations upon her manipulative abilities than those included in the ALJ's RFC.

Claimant next indicates that the ALJ's RFC did not include further restrictions upon her ability to stand or walk as a result of swelling in the joints, findings of tenderness in her hips, and evidence of past fractures in both feet. She also states that her complaints of fatigue and morning stiffness imposed addtional limitations upon her. Claimant contends that these limitations restricted her to no more than sedentary work. She refers to the medical records of Dr. Fahed Hamadeh to support these allegations. However, nothing in these records demonstrates that Dr. Hamadeh believed that further restrictions in Claimant's ability to work or function generally should have been imposed on Claimant. These conditions to which Claimant refers are primarily related in the record in Claimant's subjective recitation to Dr. Hamadeh rather than in any medical diagnosis or assessment. (Tr. 465-500). While Dr. Hamadeh suspected Claimant did suffer from rheumatoid arthritis, he did not place restrictions in the use of her feet as Claimant

7

suggests.  Any further limitations would be mere speculation. Indeed, the reviewing physicians - the only physicians to actually perform a functional analysis of Claimant's conditions - found no more limitations on Claimant's ability to use her lower extremities or fatigue and morning stiffness than the ALJ included in the RFC. (Tr. 71-72, 100-01).

Since this Court finds no error in the RFC and the ALJ's hypothetical questioning largely mirrored the limitations he found, the ALJ's step five evaluation of the medical and functional evidence as well as his questioning of the vocational expert is supported by substantial evidence.

**Credibility Evaluation**

Claimant also challenges the ALJ's credibility evaluation of his subjective testimony.  Claimant testified that she was in pain and sought relief from a free clinic for her fibromyalgia and rheumatoid arthritis.  She did not suffer any side effects from the medication she was prescribed.  (Tr. 45).  Claimant stated she suffered from depression but lost her insurance and no longer attends counseling.  She takes medication for the condition.  (Tr. 46).

Claimant states she could walk without problems about 25 or so yards, sit for 15-20 minutes, and stand for about ten minutes.  She

could lift a gallon of milk with both hands. She stated that she could not push, pull, or reach overhead because "[i]t burns and it hurts in my back and my shoulders." Claimant stated that it was hard to use her hands for picking up small items. (Tr. 47). She stated she had difficulties periodically with memory and attention and concentration. She also testified to problems making decisions, dealing with the public which caused panic attacks, and trouble with sleeping. (Tr. 48-49). She made some meals for herself and did a little household chores, including doing the dishes and vacuum once a week. Claimant stated that her daughter-in-law did most of her cleaning and grocery shopping. She did not take care of the bills or do any outside yard work. She used her iPad for e-mail and Facebook. (Tr. 50).

Claimant did not testify as to any outside activities. She reads and watches some television. (Tr. 51). On occasion, she attends her grandchild's football games. (Tr. 52).

She stated that her feet and hips hurt if she walks. She took pain medication but it did not help. Claimant stated that she broke her foot at one point. (Tr. 53). She agreed with her counsel that 20 pounds was a limit and cannot lift her dog without hurting. Her hips and feet start to swell if she sits for 15 to 20 minutes but was not quite as bad if she elevated her feet. (Tr. 54). Stress makes the symptoms worse. She worked from home until December of

9

2011. In June of 2011, her grandchild was beat to death and she found she could not work under the resulting stress and anxiety. (Tr. 55). She estimated that she suffered from panic attacks two to three times a week. (Tr. 56). Her dog can cause her to suffer a panic attack by being obnoxious. (Tr. 57).

The ALJ discounted the intensity, persistence, and limiting effects of her symptoms as inconsistent with the medical evidence in the record. (Tr. 23-24). He found (1) improvement with her medication, including that for controlling her pain; (2) no motor or sensory deficits appear in the record; (3) her gait and station remained within normal limits; (4) judgment and insight were intact and she exhibited normal and appropriate mood and affect; (5) consultative examinations revealed fine manipulation, normal strength in upper and lower extremities, no sensory or motor deficits, normal gait, and alert and fully oriented with intact memory and normal thought processes; (6) conservative treatment for controlling her symptoms; (7) normal mental status examinations; (8) functional findings by the consultative examiners which were inconsistent with Claimant's testimony; and (9) daily activities which were inconsistent with Claimant's testimony of limitation. (Tr. 23-26).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not

10

just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ relied upon appropriate factors in evaluating the credibility of Claimant's statements. The nature of Claimant's treatment, the objective medical testing, functional evaluations, and the inconsistencies between the claimed restrictions and

11

Claimant's activities all form specific and legitimate reasons for the ALJ's questioning of Claimant's credibility. No error is attributed to the ALJ's credibility analysis.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 18th day of March, 2019.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE